**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　)　Case No. 26-00034-01-CR-W-BCW
　　　　　　　　　　　　　　　　　　　)
TYLER LEROY HILBERT,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　　)

## <u>ORDER</u>

Before the Court is the Government's Motion for Determination of Competency. (Doc. 5) Through the motion, the Government seeks a custodial evaluation of Defendant for such determination.

## I.　　BACKGROUND

On January 27, 2026, a five-count Indictment was returned charging Defendant with one count of cyberstalking of a minor, in violation of 18 U.S.C. §§ 2261A(2)(B), 2261B(a), one count of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B), 2261(b)(5), one count of interstate threats, in violation of 18 U.S.C. § 875(c), one count of interstate threats involving explosives, in violation of 18 U.S.C. § 844(e), and one count of false information and hoaxes, in violation of 18 U.S.C. §§ 1038(a)(1), (a)(1)(A). Defendant was arrested and appeared before this Court for an initial appearance on January 28, 2026. Prior to the initial appearance, the Government filed a motion for determination of Defendant's competency. (Doc. 5)

An evidentiary hearing on the Government's motion was held on February 2, 2026. The Government appeared by Assistant United States Attorney Teresa Moore. Defendant was present, represented by appointed counsel Lesley Smith. The Government called Federal Bureau of

Investigation Special Agent Isaac McPheeters to testify. Frederick E. Hilbert, Jr., testified on behalf of Defendant. The following exhibit was admitted into evidence without objection:

> Exhibit 1    Henry County, Missouri Case No. 23HE-PR00120 Court Documents.

(Tr. at 4-5) The Court accepted the following proffer from the Government, without objection: Barring unforeseen circumstances, there is currently no wait for a competency evaluation within the Bureau of Prisons ("BOP"). (Tr. at 2-3) Once a competency evaluation is ordered by the Court, it will take some time for Defendant to be designated to the appropriate facility. (Tr. at 3) Upon designation, it may take an additional 15 days for Defendant to be transported to the facility, thus making the total estimate for designation and transport less than 30 days. (Tr. at 3-4)

## II.    ANALYSIS

Title 18, United States Code, Section 4247(b) provides that for purposes of a competency evaluation, "the court *may* commit the person to be examined for a reasonable period . . . to the custody of the Attorney General for placement in a suitable facility." (emphasis added). "Commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *United States v. Neal*, 679 F.3d 737, 740 (8th Cir. 2012) (quoting *Revels v. Sanders*, 519 F.3d 734, 740 (8th Cir. 2008)). "The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny. There must be a 'sufficiently compelling' governmental interest to justify such action, . . . [such as] a regulatory interest in forestalling danger to the community." *Id*. (quoting *Reno v. Flores*, 507 U.S. 292, 316 (1993) (O'Connor, J., concurring)). As stated by the Eighth Circuit in *Neal*, "[d]ue process . . . requires the government, when it deprives an individual of liberty, to fetter his freedom in the least restrictive manner." *Id*. at 741 (quoting *In re Newchurch*, 807 F.3d 404, 409 (5th Cir. 1986)). "A person accused of a crime should not therefore be deprived of personal liberty unless his

2

confinement is reasonably necessary to assure his presence at trial or to protect some other governmental interest." *Id*. (quoting *Newchurch*, 807 F.3d at 408-09).

In this case, the Government identified two governmental interests served by a custodial evaluation: (1) protection of the community, as evidenced by the crimes charged in the Indictment, Defendant's criminal history involving similar behavior, Defendant's experience with and knowledge about technology, the alleged occurrence of criminal acts while Defendant was under a guardianship, and the potential for continued criminal activity; and (2) the specific expertise of BOP evaluators in conducting competency evaluations. (Tr. at 56-58) Defense counsel maintains an outpatient evaluation would be less restrictive, especially given Defendant's physical and mental health issues, the fact that Defendant has not been receiving his prescribed medications while in custody,[1] and the willingness of Defendant's parents to help guide Defendant and to abide by any parameters set for his behavior. (Tr. at 58-62)

The Court finds the evidence offered by the Government establishes the presence of a sufficiently compelling governmental interest of protecting the community that requires Defendant's competency evaluation to be conducted pursuant to a custodial commitment, rather than on an outpatient basis. The Indictment alleges conduct spanning from August 28, 2023, through December 7, 2023. (Doc. 1) Such conduct involves hoax calls and threat calls to individuals (both a minor and adult), 911 centers, and to a school. (Tr. at 7-8) Specifically, Defendant is alleged to have sent threatening text messages to a minor victim. (Tr. at 8; Doc. 1, Count Three) He is also alleged to have placed hoax calls to a high school and 911 center in California regarding a shooter or bombs at the school, which resulted in the school being locked down and law enforcement responding. (Tr. at 8)

---

[1]At the conclusion of the evidentiary hearing, the Court directed defense counsel to address Defendant's medication needs with the United States Marshals Service, and to alert the Court if such needs are not met. (Tr. at 62)

Defendant has been under a guardianship since November 7, 2023, with his parents acting as co-guardians. (Tr. at 5, 46-47; Exh. 1)

Defendant's criminal history reveals a pattern of behavior similar to that charged in the Indictment. (*See* Tr. at 9-10) Defendant was charged in Johnson County, Missouri, and pled guilty to one count of terroristic threat (3rd degree) and three counts of making a false report. (Tr. at 9) Defendant was sentenced to a suspended imposition of sentence and two years probation; probation revocation has been requested due to Defendant's subsequent alleged conduct. (Tr. at 9) Defendant was also convicted in Henry County, Missouri, for making a false report and was sentenced on February 27, 2024, to two years probation. (Tr. at 9-10) He sustained a conviction in Cass County, Missouri, for two counts of misusing 911, and was sentenced on August 13, 2024, to a suspended imposition of sentence and two years probation. (Tr. at 10) He was also convicted in Winona County, Minnesota, on April 22, 2025, for placing fictitious 911 calls to prompt a response and received two years probation. (Tr. at 10) Most recently, in January of 2026, Defendant was arrested in Pettis County, Missouri, on an abuse of 911 charge. (Tr. at 15) False calls to 911 take resources from law enforcement and responding personnel, and can also create a risk to responding officers and to the general public by the nature of units responding quickly. (Tr. at 18-19)

Beyond the continuing nature of Defendant's behavior, examination of the timeline of Defendant's criminal history reveals that the alleged conduct forming the basis of the Pettis County, Missouri, charge and the instant Indictment in this Court occurred, at least in part, while Defendant was under the guardianship. Defendant is adept at obtaining electronic devices and masking his identity when using them. (*See* Tr. at 12-15) On May 23, 2024, law enforcement

executed a search warrant on Defendant's residence and seized sixteen electronic devices that belonged to Defendant. (Tr. at 11, 13-14) One of the phones had a "707" area code, which corresponds to the location of the high school in California about which hoax calls were made. (Tr. at 14) Defendant told Special Agent McPheeters that he obtained a "707" area code so that people receiving calls would think he was local. (Tr. at 14) Defendant further advised Special Agent McPheeters that he used multiple names when making hoax calls and/or masked the identity of or blocked the phone number. (Tr. at 12-13)

The Court gives serious consideration to Defendant's non-custodial request and recognizes his mental and physical health concerns. Defendant has been diagnosed with Autism – Level 2, ADHD and intellectual disabilities. (Tr. at 30-31) He does not do well in crowds, including in a jail setting -- which additionally poses difficulties for Defendant sleeping, eating and going to the bathroom. (Tr. at 35-36, 39-40) Defendant suffers from dysphagia -- which makes it difficult for him to swallow both solids and liquids, and bradycardia -- which affects his heart. (Tr. at 36-37) When Defendant does not eat or sleep well, he has had seizures. (Tr. at 37-38) The Court notes that Defendant also experiences these difficulties while living at home. (Tr. at 36-38)

The judgment establishing the guardianship was dated November 7, 2023. (Exh. 1) Defendant has lived with his parents since being placed in their care as an infant. (Tr. at 26-27, 33-34) Defendant's father testified doctors have confirmed that Defendant will never be able to live on his own. (Tr. at 32) Defendant's father testified that if Defendant were permitted to continue living at home, they would put Defendant's phones in a safe and ensure Defendant could not access their phones. (Tr. at 41-42, 52) Defendant's parents can provide transportation to any Court-ordered evaluations or other appointments. (Tr. at 42)

While the Court recognizes Defendant's parents' many supportive efforts and their continued willingness to help Defendant, it finds that a custodial evaluation is reasonably necessary to assure compliance that would protect the community. At least some of the conduct alleged in the instant Indictment as well as the conduct currently charged in Pettis County, Missouri, occurred while Defendant was under a guardianship. Indeed, Defendant's father testified that he and Defendant's mother had "lost [their] authority" with Defendant. (Tr. at 33, 34, 42, 45-46) During the period of the guardianship, Defendant has been noncompliant with his medications even given his parents' efforts. (*See* Tr. at 38) The likelihood of Defendant consistently receiving his medications, for both the mental and physical health issues, is greater while in BOP custody.

The Government also asserted that an inpatient evaluation would allow evaluation of Defendant's competency by BOP psychologists and psychiatrists who have developed expertise in this area. While the Court does see value in a more extended evaluation, it does not find this interest as compelling as that addressed by protection of the community.

In short, the Court finds the Government has met its burden to show that the custodial evaluation of Defendant is reasonably necessary to protect the sufficiently compelling governmental interest of protecting the community.

### III. CONCLUSION

For the reasons set forth above, it is

ORDERED that the Government's Motion for Determination of Competency (Doc. 5) is granted. It is further

ORDERED that Defendant shall be committed to the custody of the Attorney General for placement in a suitable facility, pursuant to 18 U.S.C. § 4247(b), to undergo a psychiatric or

6

psychological examination, pursuant to 18 U.S.C. § 4241(b), to be conducted by a licensed or certified psychiatrist or psychologist employed by the institution to determine whether he is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. It is further

ORDERED that pursuant to 18 U.S.C. § 4247(b) the commitment of Defendant to the custody of the Attorney General herein ordered shall not exceed thirty days unless that time is extended for an additional period of time not to exceed fifteen days upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant. It is further

ORDERED that, upon completion of the examination herein ordered, the examining psychiatrist or psychologist shall prepare a report, for filing with the Court, in accordance with the provisions of 18 U.S.C. § 4247(c). It is further

ORDERED that the United States Marshal for the Western District of Missouri forthwith transport Defendant to the facility designated by the Attorney General. It is further

ORDERED that, upon completion of the examination herein ordered, Defendant shall promptly be returned before the Court for a hearing to determine whether or not Defendant is presently suffering from a mental disease or defect which renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Dated this 12th day of February, 2026, at Kansas City, Missouri.

/s/ <em>Jill A. Morris</em>

JILL A. MORRIS

UNITED STATES MAGISTRATE JUDGE